UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: PROPERTY MOVERS, L.L.C.,
　　　　　　　　　　　　*Debtor.*

PROPERTY MOVERS, L.L.C.,
　　　　　　*Plaintiff-Appellant,*

v.

JOSEPH GOODWIN; HOPE GOODWIN,
　　　　　　*Defendants-Appellees.*

No. 01-1742

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-01-116-A, BK-00-11721-RGM)

Argued: December 3, 2001

Decided: February 14, 2002

Before LUTTIG, WILLIAMS, and MOTZ, Circuit Judges.

---

Affirmed, appellees' motion for damages granted, and appellant's counter-motion for damages denied by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Thomas Kenneth Plofchan, Jr., PLOFCHAN & ASSOCIATES, Sterling, Virginia, for Appellant. William Scott Greco,

GRECO & GRECO, P.C., McLean, Virginia, for Appellees. **ON BRIEF:** Frederick D. Greco, GRECO & GRECO, P.C., McLean, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Property Movers LLC appeals the district court's imposition of sanctions for the filing of a frivolous bankruptcy appeal, contending that its appeal was never moot, had merit, and was not frivolously argued. Property Movers further appeals the merits of the district court's finding that its bankruptcy appeal was moot. Finding that it was clear beyond all doubt that Property Movers' appeal was taken from an order that was and is moot, and further, that Property Movers' arguments on appeal to the district court were patently baseless, illogical, and without support in fact or law, we will affirm. Further, we find that Property Movers' appeal to this Court is frivolous both as filed and as argued, and we grant the motion of Property Movers' sole creditor, the Goodwins, for sanctions against Property Movers pursuant to Federal Rule of Civil Procedure 38, while denying Property Movers' counter-motion for sanctions.

I.

A.

This action arises from a dispute over a real estate sale between the Goodwins and Norman Bradford, principal of Property Movers. Bradford and Property Movers leased a house from the Goodwins on a month-to-month basis, in which Bradford lived. Bradford and the Goodwins were negotiating a purchase of the residence by Bradford, but the purchase never occurred, allegedly because the Goodwins

increased the asking price after learning that the property had been appraised for substantially more than their original asking price. Bradford threatened to sue the Goodwins for failing to go through with the sale, and the Goodwins brought an action seeking to evict Bradford and Property Movers for nonpayment of rent. Settlement negotiations occurred, and Bradford placed a rent check in escrow, apparently pending a successful settlement. Bradford asserts that the "settlement attorney" told him the case would be settled. The Goodwins, however, proceeded with their eviction action in state court. Bradford appeared at a hearing in the eviction action, but Property Movers was treated by the state court as not having appeared because its counsel was not in attendance. The hearing resulted in a judgment against Bradford personally and a default judgment against Property Movers.

## B.

On April 18, 2000, Property Movers filed a Chapter 7 bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of Virginia. The Goodwins, as creditors, filed a motion for relief from the automatic stay imposed by the bankruptcy filing. On May 17, 2000, Bankruptcy Judge Robert G. Mayer lifted the automatic stay with respect to Property Movers' only asset, a month-to-month leasehold interest in Bradford's home, as well as with respect to a pending unlawful detainer action regarding the Bradford residence and any other claims brought by the Goodwins. Property Movers filed a motion to reconsider the lifting of the stay and filed a motion for emergency injunctive relief. Notwithstanding the pendency of these motions, in early August 2000, the Goodwins secured an order evicting Bradford and Property Movers from the property. On August 17, 2000, noting that the lift-stay issue was moot, Property Movers withdrew its motion for reconsideration of the lift-stay order. Property Movers then appealed the grant of the lift-stay order to the district court. Due to the apparent misplacing of Property Movers' notice of appeal, the appeal was not heard until March 30, 2001, but Property Movers continued to argue for a reversal of the lift-stay order, eight months after it had been evicted. By order dated April 25, 2001, the district court affirmed the bankruptcy court and awarded sanctions against Property Movers for the filing of a frivolous appeal, finding that the appeal was clearly moot because Property Movers had already been evicted. Property Movers timely appealed.

On appeal, Property Movers argues that the district court did not apply the proper standard of review to the bankruptcy appeal; that the district court erred in justifying sanctions by reference to Property Movers' failure to cite legal authority in support of its arguments; and, in gross, that its appeal was not moot and in fact had merit because the bankruptcy court's lift-stay order encompassed potential future assets of Property Movers, and because Property Movers was challenging the validity of its debt to the Goodwins.

## II.

The district court's award of sanctions in this case was authorized by Bankruptcy Rule 8020, which permits a district court to impose sanctions for the filing of a frivolous bankruptcy appeal. Because the language of Bankr. Rule 8020 is materially identical to Fed. R. App. P. 38, the sanctions provision for the filing of frivolous appeals in the Court of Appeals, the standard for imposing sanctions is similar. *Pettey v. Belanger*, 232 B.R. 543, 548 (D. Mass. 1999). As to the standard of review for a district court's award of sanctions under Bankruptcy Rule 8020, we find applicable by analogy the unitary abuse of discretion standard applicable to the review of a sanctions award under Fed. R. Civ. P. 11. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 403 (1990). We review the district court's dismissal of this appeal on mootness grounds de novo.[1] *Stop H-3 Ass'n v. Dole*, 870 F.2d 1419, 1423 (9th Cir. 1989).

---

[1]While our resolution of the sanctions and mootness issues leaves us no occasion to review any of the district court's other determinations, we briefly address Property Movers' citation of *In re Campbell*, 812 F.2d 1465 (4th Cir. 1987), for the proposition that Article III concerns require de novo reexamination of both the legal and factual conclusions of bankruptcy courts. This assertion is based on a failure to apprehend the difference between core and noncore proceedings. *Campbell* noted that in the wake of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), questioning the Article III permissibility of assigning certain types of adjudication to non-Article III bankruptcy courts, Congress has mandated, via 28 U.S.C.A. § 157(c)(1) (West 1993), that district courts "apply a de novo standard . . . in cases such as this one." *Campbell*, 812 F.2d at 1467. Section 157(c)(1) requires de novo review only in *noncore* bankruptcy proceed-

## A.

A court considering a motion for sanctions for the filing of a frivolous appeal must "first determine that the appeal is frivolous, and then determine that this is an appropriate case for the imposition of sanctions." *Williams v. United States Postal Service*, 873 F.2d 1069, 1075 (7th Cir. 1989). An appeal is frivolous where "the result is obvious or when the appellant's argument is wholly without merit." *Id.* (internal quotation marks omitted). A finding of frivolity is appropriate where an appellant cites no relevant cases in response to a lower court's accurate exposition of the law, and where an appellant's arguments are irrelevant to the issues in dispute. *Id.* It is particularly appropriate to hold not only the appellant, but also his attorney, liable for a sanctions award when the frivolity of an appeal is premised not only on the filing of the appeal but also on the type of arguments used to support it. *Dungaree Realty, Inc. v. United States*, 30 F.3d 122, 124-25 (Fed. Cir. 1994). Sanctions for the filing of a frivolous appeal are desirable in an appropriate case because "they compensate the prevailing party for the expense of having to defend a wholly meritless appeal, and by deterring frivolity, they preserve the appellate calendar for cases truly worthy of consideration." *Id.* at 125 (internal quotation marks omitted). We will analyze the frivolity of Property Movers' appeal (an inquiry which, as we shall see, subsumes the merits of this appeal) by first examining whether the appeal was frivolous "as filed," i.e. whether the result would have been obvious regardless of how Property Movers' appeals were argued, and then by turning to an examination of how Property Movers has argued its appeals in the district court and in this Court.

---

ings. A motion to allow a liquidated claim against the bankruptcy estate and a motion to lift an automatic stay are *core* proceedings under 28 U.S.C.A. § 157(b)(2) (West 1993), and Bankr. Rule 8013 requires the application of the clear error standard to factual findings in core proceedings. The "core/noncore" distinction was Congress's response to *Northern Pipeline*; this Court has not questioned the constitutional permissibility of the § 157 scheme but has instead repeatedly affirmed the application of the clear error standard to factual findings in core proceedings. *E.g.*, *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999).

## B.

Property Movers attempts to characterize this appeal as involving at least seven issues. A single issue of jurisdictional dimension — mootness — is, however, dispositive of this appeal, and the focus of our inquiry is thus on Property Movers' argument that its appeals to the district court and to this Court were not rendered moot by its eviction from Bradford's former residence. Property Movers contends that its appeal to the district court was not moot because (1) the bankruptcy court's lift-stay order reached property other than the former Bradford residence, and (2) its appeal sought to challenge the bankruptcy court's ruling, or failure to rule, on the validity of Property Movers' debt to the Goodwins.

Property Movers argued to the district court only that mootness was defeated by the fact that it was challenging the validity of the debt; consequently, its argument that other assets were potentially subject to the lift-stay order is addressed here only as it relates to the appropriateness of sanctions. *Cf. Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998) (arguments not made below are waived). At the outset, Property Movers concedes that the district court lacked the ability to restore Property Movers to possession of the Bradford residence more than eight months after it was evicted and its month-to-month lease was terminated. Indeed, Property Movers denies that it ever asked the district court to take this action. The only relief requested by Property Movers in its appeal to the district court was the reversal of the bankruptcy court's lift-stay order, however, and Property Movers must show that the reversal of this order would have provided it with some form of effective relief. In an attempt to meet this burden, Property Movers argues that the lift-stay order was not moot because "should Property Movers receive assets in the future" without the stay, "Appellees could make a claim for those assets." (Br. of Appellant at 38.)

Section 362 of the bankruptcy code states that an automatic stay in bankruptcy applies to proceedings against any of a debtor's assets, subject to various exceptions. *See* 11 U.S.C.A. § 362 (West 1993 & Supp. 2000). The lift-stay order in this case applied to the Bradford residence, the Goodwins' unlawful detainer action regarding that residence, and claims brought by the Goodwins generally. Property Mov-

ers, in its filings below, described the lift-stay order as limited to the Bradfords' former residence, and at no point argued to the district court that the likelihood of future assets becoming subject to the Goodwins' claims defeated mootness. (J.A. at 98.) Property Movers also conceded that the rehearing motion on the lift-stay order was moot. After Property Movers was evicted from the Bradford residence and its month-to-month leasehold interest in the residence ceased to exist, it had no assets of any kind. Bradford testified that Property Movers has never had any assets other than the leasehold interest in Bradford's residence, has never had a bank account, has never filed tax returns, and has never engaged in any business activity other than notional "transactions" whereby Bradford, in paying the rent on his residence, characterized his rent and utilities payments, made in cash from his personal resources, as involving a loan to Property Movers followed by a payment of the rent by Property Movers. Bradford testified, however, that these "loans" were always forgiven as soon as they were made.

It is well-established that a bankruptcy appeal is moot when a court "is without the power to afford effective relief." *Central States, S.E. and S.W. Areas Pension Fund v. Central Transp., Inc.*, 841 F.2d 92, 96 (4th Cir. 1988). When a debtor ceases to retain any interest in the property against which a bankruptcy stay would operate, a lift-stay motion becomes moot. *In re Byker*, 64 B.R. 640, 642 (Bankr. N.D. Iowa 1986); *see also In re Marin Town Ctr.*, 142 B.R. 374, 382 (N.D. Cal. 1992) (noting that when "changes in circumstances [make] it impossible for [the court] to . . . restore the interested parties to their former position" or provide other effective relief, an appeal is moot (alterations in original) (internal quotation marks omitted)). When it is clear that there never will be any assets available to satisfy a creditor's claims, an appeal becomes moot. *Cox v. Sunbelt Savings Ass'n*, 896 F.2d 957, 959-60 (5th Cir. 1990) (addressing prudential mootness); *cf. Central States Pension Fund*, 841 F.2d at 96 (addressing equitable mootness). Here, the Goodwins argued below that Property Movers' appeal was moot for exactly this reason, and neither below nor on appeal has Property Movers made any showing that the prospect of assets being available to satisfy any liability to the Goodwins is anything other than the very remotest of possibilities. Property Movers may not resist a finding of mootness by simply asserting in its appellate brief that additional assets are likely to be subject to the

Goodwins' claims, when the undisputed evidence indicates that Property Movers is a shell corporation which has never had any assets of any kind other than its share in a month-to-month leasehold interest in Bradford's residence.[2] Thus, even if Property Movers' argument regarding potential future assets were not clearly waived, it is entirely baseless.

With respect to Property Movers' second contention, that the issue of the "validity of the debt" to the Goodwins precludes a finding of mootness, it is clear that Property Movers never appealed a bankruptcy court determination of the validity of a debt to the Goodwins, and it could not have done so because there was no such determination. Indeed, Property Movers, in its appellate brief to the district court, described the order appealed from exclusively as an order lifting the automatic bankruptcy stay with respect to the Bradford residence. (J.A. at 98.) Property Movers, in its brief, made no mention of any order regarding the validity of the debt, stating only, in connection with the appeal of the lift-stay order, that "there was considerable question as to the validity of the debt." (J.A. at 101.) Property Movers now continues to argue that "no court ever ruled on the validity of the debt," and that "the bankruptcy court did not determine the validity of the debt." (Br. of Appellant at 13, 20.) On a very sympathetic reading of its brief to the district court, one could conclude that Property Movers appealed a grant of a lift-stay motion on the basis that the bankruptcy court *should have* entered a final, reviewable order determining the validity of the debt before lifting the stay. Property Movers cites no authority, however, holding that a final ruling on the validity of a debt is a precondition to the lifting of an automatic stay in bankruptcy. The bankruptcy court's lift-stay order properly did not include or constitute a final ruling or order of any kind on the validity of the debt. *See Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 32 (1st Cir. 1994) (stating that lift-stay hearings "do not involve a full

---

[2]Had this argument been properly raised below, this Court would have the benefit of factual findings by which to evaluate it. Because we consider this waived argument solely as it relates to the imposition of sanctions for the filing of this appeal, we find it necessary to consider the record before this Court, which is devoid of facts indicating that the district court or this Court could provide effective relief to Property Movers by reversing the lift-stay order.

adjudication on the merits of claims, defenses, or counterclaims," but merely involve a more preliminary determination). Therefore, there can have been no appeal of such an order. *See* 28 U.S.C.A. § 158(a)(1) (stating that the district court reviews "judgments, orders and decrees"). Any issue relating to the validity of the debt, therefore, cannot save Property Movers' appeal from mootness; at most, Property Movers' arguments in this regard are agruments going to the merits of the lift-stay order which are beside the point if that order was moot.

It is clear that Property Movers' appeal to the district court became moot when the Goodwins evicted Property Movers from the Bradford residence.[3] Property Movers' arguments to the contrary are so unconvincing that we must deem this appeal as well as Property Movers' appeal to the district court frivolous as filed, because "the result is obvious [and] the appellant's argument is wholly without merit." *Williams*, 873 F.2d at 1075 (internal quotation marks omitted). We now turn to the questions of whether Property Movers' appeals were frivolous as argued, and whether it is appropriate to impose sanctions on Property Movers' counsel as well as Property Movers itself.

## C.

We will proceed by surveying Property Movers' relevant contentions before the district court and examine how Property Movers defends each of these contentions on appeal. This examination reveals that Property Movers' pattern of illogical and irrelevant argument before the district court continues in this appeal.

Before the district court, Property Movers filed a brief which, as we have noted above, made no plausible argument that the district court could afford Property Movers some form of effective relief. Property Movers' brief to the district court did, however, contain several arguments, which we evaluate in turn. First, Property Movers

---

[3]As a consequence, we do not address the parties' arguments regarding whether the state court judgment against Property Movers was valid or regarding the impact of a pending state court breach of contract action brought by Bradford against the Goodwins on this litigation. The mootness of Property Movers' appeal renders these controversies irrelevant.

contended that the Goodwins, via their counsel, "committed fraud on the Bankruptcy Court and caused the Court to rely on certain statements [and other information] that [was] materially false." (J.A. at 99.) Property Movers argued that this was the case because counsel for the Goodwins allegedly asserted that a trial on the merits had taken place in the Goodwins' unlawful detainer action, which Property Movers asserted was an example of "serial perjury committed by the alleged Appellees [sic] Counsel." (J.A. at 104.) Further, Property Movers argued that the testimony of Geraldine Quigley, a witness in the bankruptcy court proceeding, was inaccurate.

What counsel for the Goodwins said to the bankruptcy court was that "all these issues [relating to the unlawful detainer action] ha[ve] been previously argued before the state court and [are] subject to a final judgment." J.A. 83. Because the judgment against Property Movers was a default judgment, Property Movers asserts that this statement constitutes "perjury." However, it bears note that (1) while the state court's judgment against Property Movers was indeed a default judgment, Bradford admitted that the state court in the unlawful detainer action issued a final judgment on the merits against him personally after he appeared in the state court proceeding, and (2) it is well-established that a default judgment is a final judgment on the merits, and res judicata precludes the raising of defenses that could have been raised in the earlier action. *Credit Alliance Corp. v. Williams*, 851 F.2d 119, 122 (4th Cir. 1988). Under the circumstances, it was frivolous for Property Movers to label this statement by opposing counsel an act of perjury. Further, we have reviewed Property Movers' contentions regarding Ms. Quigley's testimony and there is no basis in the record for the claim that she testified falsely by stating that Bradford never signed a real estate sales contract. Undeterred by the district court's sanctions award, Property Movers continues to accuse opposing counsel of committing "criminal acts" and requests that this Court refer opposing counsel to the United States Attorney's office "to start an investigation regarding the perjury committed by Appellees' counsel." (Appellant's Motion in Opposition to Sanctions at 8.) Serious accusations of this sort are frivolous when they attempt to characterize what is at most a disagreement over facts or law as criminal conduct.

Property Movers also has placed great emphasis throughout the course of this litigation on its contention that the Goodwins do not, in fact, exist. The genesis of this argument was Property Movers' statement in its brief to the district court that "[neither] [t]he appellant, nor this honorable court, has any proof that the Goodwins in fact exist." (J.A. at 99.) Amplifying this contention, Property Movers consistently referred below to counsel for the Goodwins as "the alleged Appellees' counsel." (J.A. at 103.) The district court labeled this argument "completely irrelevant." (J.A. at 168.) On appeal to this Court, Property Movers labels this concusion "untenable," and undertakes to defend at some length its contention that the Goodwins do not exist. Noting correctly that "the existence of the parties in a lawsuit is a fundamental element — no parties, no suit," Property Movers contends that it would be "bereft of common sense" if it did not challenge the Goodwins' existence, since "there is no witness with first hand knowledge" that they exist.[4] (Br. of Appellant at 23-24.) We note, however, that Norman Bradford testified in the Bankruptcy Court that he signed a lease with the Goodwins, that he paid rent to the Goodwins, and that he received a copy of a property sales contract signed by the Goodwins, a set of circumstances which clearly implies that they exist. Property Movers' extended challenge in this appeal to the existence of the Goodwins is exactly the sort of unfounded and illogical argument capable of rendering an appeal frivolous as argued. *See Romala Corp. v. United States*, 927 F.2d 1219, 1225 (Fed. Cir. 1991) (holding that sanctions are appropriate where "the arguments made . . . are predominantly irrelevant or illogical").

Next, Property Movers, in its brief to the district court, argued that (1) "upon information and belief," counsel for the Goodwins had ex parte communications with the bankruptcy judge in this case, and that (2) "the evidence was there for [the bankruptcy judge] but he never addressed it to save his friend," counsel for the Goodwins. (J.A. at 108.) The district court asked Property Movers' counsel to provide a basis for these claims and suggested that if a factual basis existed for the claims, a complaint to the appropriate attorney and/or judicial disciplinary authorities would be appropriate. In response, Property

---

[4]Property Movers urges this Court, in language bolded for emphasis, that "**appellees' existence is not only relevant it is vital**." (Br. of Appellant at 24.)

Movers' counsel stated that the judicial misconduct claims were "not an accusation that we are asking this Court to determine." (J.A. at 134.) When the district court noted that these accusations were included in Property Movers' brief to the district court and pressed counsel to illuminate their basis, counsel argued that he was merely relying on his client's belief. *But see* Fed. R. Civ. P. 11(b) (stating that counsel, by presenting a "pleading, written motion or other paper" to the Court, "is certifying to the best of the person's knowledge, information, or belief, *formed after an inquiry reasonable under the circumstances*, [that] . . . the allegations or other factual contentions have evidentiary support or . . . are likely to have evidentiary support after a reasonable investigation." (emphasis added)). When Bradford took the stand to testify as to the basis for his "belief" that *ex parte* contacts had occurred, the sole factual basis he could identify was the statement of a third party, whose name Bradford did not know but "who [he] assumed to be an attorney" and whom he met while in line at the courthouse waiting to make an inquiry, that counsel for the Goodwins had "been friends with" the bankruptcy judge. ( J.A. at 137.) As a foundation for a claim that the bankruptcy judge "ignored [evidence] to save his friend" and engaged in improper ex parte contacts, this information is tantamount to no basis at all.

Before this Court, Property Movers denies that it ever made "any accusation . . . against anyone." (Br. of Appellant at 27.) Yet the plain language of Property Movers' brief to the district court refutes this contention. Further undertaking to defend its ex-parte-contacts accusation before this Court, Property Movers attempts to draw a distinction between counsel having ex parte contacts with the bankruptcy judge and the bankruptcy judge having ex parte contacts with counsel. The distinction, even if tenable, is beside the point because Property Movers still can show no good faith basis for believing that either form of ex parte contacts occurred.[5]

---

[5]Property Movers can cite no authority for its contention that the United States Constitution protects the right to make wholly unfounded accusations of judicial and attorney misconduct in papers filed in an ordinary court proceeding. *Cf. In re Kelly*, 808 F.2d 549, 550 (7th Cir. 1986) (rejecting the contention that Rule 11 is infirm under the First Amendment).

Property Movers makes a number of additional arguments on appeal, contending that the district court denied it constitutional due process by misreading its pleadings, which Property Movers claims clearly raised the issue of "the validity of the debt" to the Goodwins; that the district court denied it due process by failing to recognize that the validity of the debt should have been determined by the bankruptcy court; and that the district court erred in finding its appeal frivolous in part based on its total failure to cite any legal authority in its briefs to the district court. We have reviewed these contentions and find them to be without merit.

III.

We are cognizant that sanctions should not be lightly imposed for the filing of a frivolous appeal. Nevertheless, because Property Movers has pursued this moot appeal principally by making arguments which are irrelevant, illogical, and utterly without any good-faith factual basis, we find that this appeal is frivolous as argued to this Court, and find that the district court did not abuse its discretion in finding Property Movers' appeal to the district court to be frivolous and sanctionable. Further, because the as-argued frivolity of this appeal is demonstrated "in the type of argument[s] used to support it," such as the challenge to the Goodwins' existence and baseless accusations that opposing counsel has engaged in criminal conduct, this is an appropriate case in which to hold Property Movers and its counsel jointly and severally liable for a sanctions award. *Romala*, 927 F.2d at 1225. Property Movers does not challenge the district court's determination of a sanctions amount, nor does it contest the Goodwins' assertion that they have incurred $3,675 in legal fees defending Property Movers' appeal to this Court.

Under the circumstances, it would be grossly inequitable to require the Goodwins to bear the costs of defending this unfortunate example of a frivolous appeal. Accordingly, we affirm the district court's finding of mootness and award of sanctions in the amount of $3,064 under Bankruptcy Rule 8020. Further, we grant the Goodwins' motion for damages pursuant to Federal Rule of Appellate Procedure 38 and impose sanctions against Property Movers and its counsel, Thomas Plofchan, jointly and severally, in the amount of $3,675.00 plus twice the Goodwins' costs of this appeal. *See* Fed. R. Civ. P. 38

(providing that in an appropriate case, double costs may be awarded against a party filing a frivolous appeal). We deny Property Movers' counter-motion for damages under Rule 38.

*AFFIRMED; APPELLEES' MOTION FOR DAMAGES GRANTED; APPELLANT'S COUNTER-MOTION FOR DAMAGES DENIED*