In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-2072

CHARLES PRICE,

*Plaintiff-Appellant,*

*v.*

WYETH HOLDINGS CORPORATION,[Œ]

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 04 C 242—**Phillip P. Simon**, *Judge.*

———————

ARGUED DECEMBER 4, 2006—DECIDED SEPTEMBER 20, 2007

———————

Before EASTERBROOK, *Chief Judge*, and CUDAHY and
SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Charles Price voluntarily dis-
missed his Indiana state-court lawsuit against American
Cyanamid Company and Lederle Laboratories in 1993.
Unbeknownst to the defendants, Price then reinstated the
suit five years later and obtained a $5 million default
judgment from the state court. Price's attorney gave the
defendants no notice of these proceedings until he sought

———————

[Œ] American Cyanamid Company and Lederle Laboratories
were the original named defendants. We have adjusted the
caption for reasons explained at note 3, *infra.*

to collect on the judgment in 2004, at which point the defendants quickly removed the case to federal court and had the default judgment vacated based on the lack of notice. The district court ultimately granted summary judgment for the defendants dismissing Price's claim on statute of limitations grounds.

Price has appealed, challenging the removal of the action and the district court's orders granting relief from the default judgment and summary judgment for the defendants. Price's attorney takes the extraordinary position that his ex parte reinstatement of the lawsuit was perfectly appropriate under Indiana law. It certainly was not. The defendants were entitled to notice of the motion to reinstate and all subsequent proceedings under Indiana's trial procedure rules; ex parte conduct of this sort also violates Indiana's *Rules of Professional Conduct* for attorneys. We affirm the orders of the district court and order Price's attorney to show cause why he should not be sanctioned for filing this frivolous appeal. We also direct the clerk of this court to transmit a copy of this opinion to the Indiana Supreme Court Disciplinary Commission for any action it deems appropriate.

## I.  Background

On June 10, 1993, Cathy and Charles Price filed suit in Indiana state court against American Cyanamid Company and Lederle Laboratories (a division of American Cyanamid) after Cathy contracted polio from a child who recently had been vaccinated. Cathy's claim was based on product liability, and Charles's claim was for loss of consortium. The summons and complaint were served by certified mail on June 14, 1993, and a return of service was entered for American Cyanamid on June 23, 1993. On June 25, 1993, the manager of American Cyanamid's legal department faxed a letter to plaintiffs' counsel, Delmar

Kuchaes, informing him that the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-1 *et seq.*, requires that vaccination claims first be brought in the U.S. Court of Federal Claims ("Vaccine Court") pursuant to the federal vaccination compensation program. The letter provided plaintiffs' counsel with the telephone number and mailing address of the federal program and asked that the lawsuit be terminated as required by the Act. After receiving the facsimile letter, plaintiffs' counsel voluntarily dismissed the suit that same day, before either defendant filed an appearance or responsive pleading. Plaintiffs' counsel sent American Cyanamid a copy of the dismissal order, along with a letter stating that the suit had been "discontinue[d], or non-suit[ed]."

Over the next few years, the Prices pursued their claims in the Vaccine Court, where they ultimately learned that Charles's derivative claim was not compensable under the Vaccine Act.[1] Accordingly, in March 1998, Charles voluntarily dismissed his claim in the Vaccine Court. Cathy subsequently obtained a judgment from the Vaccine Court in excess of $1 million. On July 17, 1998, the Prices moved to reinstate their state-court action, but they did not provide any notice of that motion to the defendants. The state court reinstated the case on July 20, 1998, again without notice to either defendant. For the next year and a half, no effort was made to notify the defendants of the reinstated state-court proceedings.

On April 11, 2000, Charles Price filed motions for default judgment against the defendants, stating that process had been served in June 1993 and the defendants had subsequently failed to appear or respond; the motions said nothing about the circumstances of the volun-

---

[1] *See, e.g.*, *Shafer v. Am. Cyanamid*, 20 F.3d 1 (1st Cir. 1994) (Vaccine Act does not apply to derivative claims).

tary dismissal and were not served on the defendants. The court entered default judgments against the defendants on April 26, 2000, and scheduled an evidentiary hearing on damages. At that point, the court (*not* Price's attorney) forwarded a notice of the damages hearing to Lederle Laboratories at the address on the original summons served in 1993. On July 7, 2000, the notice was returned to sender, stating "no such office in state." As it turned out, the address on the original summons had incorrectly attributed Lederle's New York address to New Jersey, but the post office had delivered it to the New York address anyway, presumably based on the New York zip code. Price's attorney made no attempt to notify Lederle or American Cyanamid of the reinstated proceedings, the default judgment motions, or the damages hearing. The hearing went forward on June 16, 2000, and the court awarded $5 million to Charles Price.[2]

The default judgments languished in state court for approximately four years until Price initiated garnishment proceedings on June 1, 2004. At that time, Price provided the state court with a new address at which to serve the defendants, that of the registered agent for American Cyanamid and Lederle. Process for the garnishment proceedings was served on June 14, 2004, marking the first time since June 23, 1993, that the defendants received any notice of the proceedings that were taking place in Indiana state court.[3]

---

[2] Cathy Price voluntarily dismissed her state-court claim on June 16, 2000, the day of the damages hearing, pursuant to a Vaccine Act provision prohibiting a person from seeking additional recovery in state court if that party accepts an award from the Vaccine Court.

[3] We note that the defendants' Circuit Rule 26.1 Disclosure Statement and Jurisdictional Statement both state that Ameri-
(continued...)

On June 22 the defendants jointly filed a notice of removal to federal court and the case was removed. Price challenged the removal as untimely and sought a remand to state court. The district court denied remand, holding that the removal was timely because the defendants had no notice that the previously dismissed case had been reinstated until a week before they sought removal. The district court then vacated the default judgments due to Price's failure to comply with notice requirements under Indiana law. The defendants moved for summary judgment on statute of limitations grounds; the district court granted the motion, holding that the two-year statute of limitations had expired during the intervening years between the voluntary dismissal and the reinstatement of the lawsuit. Price now appeals the denial of his remand motion, the order vacating the default judgments, and the grant of summary judgment for the defendants.

## II. Discussion

### A. Timeliness of Removal

We review a district court's denial of a motion to remand to state court de novo. *Tifft v. Commonwealth Edison Co.*, 366 F.3d 513 (7th Cir. 2004). Price's claim was removable

---

[3] (...continued) can Cyanamid is now known as Wyeth Holdings Corporation, and their brief indicates that a garnishment summons was served on the registered agent for Wyeth Holdings Corporation. We also note that Lederle Laboratories, as a division of American Cyanamid (now Wyeth Holdings Corporation), has no juridical existence and can neither sue nor be sued. *See Schiavone v. Fortune,* 477 U.S. 21, 23 (1986). Accordingly, it appears that Wyeth Holdings Corporation is the appropriate defendant. We have adjusted the caption accordingly, but for ease of reading will continue to refer to the defendants in the plural.

based on diversity of citizenship.[4] 28 U.S.C. §§ 1332(a), 1441(a). Price argues that the removal was not timely under two provisions of 28 U.S.C. § 1446(b). Because federal procedure does not apply until removal occurs, FED. R. CIV. P. 81(c), we apply state rules to preremoval conduct. *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 (7th Cir. 2001).

### 1. The 30-Day Removal Clock

Price first invokes the time limit in 28 U.S.C. § 1446(b), which requires a defendant to file for removal within 30 days of receiving the initial pleading setting forth the claim for relief (or receipt of the summons if the initial pleading is not required to be served). Price argues that this period expired 30 days after the defendants received the complaint in 1993, even though the case was voluntary dismissed two weeks after it was filed. He claims that under Indiana law, a lawsuit is not actually terminated when it is voluntarily dismissed, but rather remains pending indefinitely until such time as the plaintiff may seek reinstatement. He bases this argument on the distinction between a "cause of action" and a "cause" in Indiana law; a "cause" refers to a lawsuit, whereas a "cause of action" refers to an individual theory of liability within a "cause." *See e.g.*, *Songer v. Civitas Bank*, 771 N.E.2d 61, 66-67 (Ind. 2002). Price maintains that he voluntarily dismissed only his "cause of action" in 1993; he insists that his "cause" remained pending (emptied, as it were, of its "cause of action"), and the 30-day removal clock kept on ticking and expired.

---

[4] Price's attorney attempted to argue to the contrary during oral argument, but eventually admitted he had conceded this point both in district court and in his appellate brief.

What utter nonsense. To the extent there is a difference between a "cause" and a "cause of action" under Indiana law, that difference is completely irrelevant here. *Songer* defined these terms in the context of determining whether a single lawsuit containing both legal and equitable claims required a jury trial; the case neither involved nor made any mention of voluntary dismissals. *See id.* at 66. Price cannot identify a single case supporting the notion that a voluntary dismissal terminates the "cause of action" but not the "cause." This is undoubtedly because the idea is so ridiculous; a "cause" (that is, lawsuit) cannot continue to exist once every "cause of action" within it has been dismissed. The Prices' voluntary dismissal terminated the entire case against the defendants. The "cause" did not remain pending, nor did the removal clock continue to run after the voluntarily dismissal.

Based on this same theory of a continuously pending lawsuit, Price also maintains that the defendants had a duty to continuously check the docket and therefore should be charged with constructive notice of the reinstated proceedings. This argument badly misconstrues basic principles of voluntary dismissal under Indiana law. "[O]nce a suit is voluntarily dismissed[,] the situation is just as though the suit has never been filed." *Burnett v. Camden*, 254 N.E.2d 199, 201 (Ind. 1970). A voluntarily dismissed suit may be reinstated pursuant to Rule 41(F) of the *Indiana Rules of Trial Procedure*, and "[w]hen a case is dismissed and then reinstated, it stands as if it had not been dismissed." *Waitt v. Waitt*, 429 N.E.2d 6, 7 (Ind. App. 1981) (holding that a party who failed to move for a change of venue within 30 days of receiving the initial complaint was not entitled to a new 30-day time limit when the case was reinstated after voluntary dismissal).

Accordingly, although the procedural obligations of the parties pick up exactly where they left off once a voluntarily dismissed action is validly reinstated, the defen-

dants obviously have no ongoing obligations during the time in which the suit is dismissed. Upon reinstatement, the notice rights and duties of the parties depend upon the position the parties were in when the action was voluntarily dismissed. Price's theory of constructive notice is unsupported and unsupportable; the defendants were entitled under Indiana law to actual notice of the motion for reinstatement and all subsequent pleadings.

The *Indiana Rules of Trial Procedure* require a party to serve notice of all pleadings and motions on any party who is not in default. IND. R. TRIAL P. 5(A). The record establishes that the defendants could have been in possession of the complaint for no more than 11 days at the time it was voluntarily dismissed.[5] This is well within the 23 days which Indiana allows a defendant served by mail to file an appearance or answer. No default could have been entered against either defendant prior to dismissal; the defendants were in good standing when the case was voluntarily dismissed and thus were in good standing when it was reinstated. Price therefore had a duty under Rule 5(A) of the *Indiana Rules of Trial Procedure* to serve the motion to reinstate on the defendants—a duty that his counsel apparently deliberately ignored.

Price cites *Lyerson v. Hogan*, 441 N.E.2d 683 (Ind. Ct. App. 1982), but that case involved neither a voluntary dismissal nor a defendant in good standing. *Lyerson* involved a lawsuit that languished for two years with-

---

[5] The American Cyanamid return of service lacks a date of delivery, so it is unclear precisely when the defendant first received the complaint and summons. However, the summons states that it was mailed on June 14, 1993, and even assuming it was delivered that same day, only 11 days would have passed by June 25. The Lederle Laboratories return of service indicates that it was delivered June 24, 1993.

out an appearance or answer by the defendants and without any activity from the plaintiffs. The court dismissed the case for failure to prosecute; the plaintiffs orally moved to reinstate without notifying the defendants. The Court of Appeals of Indiana held that no notice was necessary in these circumstances because the defendants were in default at the time the case was dismissed. *Id.* at 686. The court cited a provision in Rule 5(A) of the *Indiana Rules of Trial Procedure* that excludes parties in default from the notice requirement unless the pleading asserts new or additional claims for relief. *Id.* Rather than supporting Price's position, *Lyerson* thus confirms that parties *not* in default at the time of dismissal *must* be served with the motion for reinstatement.

The record demonstrates that the defendants did not receive notice of the reinstated lawsuit until June 14, 2004, when they were served with process in the garnishment proceedings. They sought removal eight days later, well within the 30-day limit even when the 11 days from June 1993 are counted. Accordingly, removal was timely, and the district court properly denied the motion to remand.

### 2.  The One-Year Removal Limit in Diversity Cases

Price also seeks refuge in the one-year limitation found in the second paragraph of § 1446(b). Section 1446(b) provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been

> filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, *except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.*

(Emphasis added.) Price claims that the emphasized language prevents removal in all diversity cases more than one year after the case was commenced; the defendants counter that the one-year bar applies only to cases that were not removable when initially filed.

The most obvious problem with Price's argument is that it rests on the illogical premise we have already rejected: that the removal clock somehow continues to run after a lawsuit has been voluntarily dismissed. It goes without saying that a dismissed case cannot be removed; removal time limits do not continue to run after a case has been dismissed. The Prices voluntarily dismissed their lawsuit two weeks after it was filed, and their counsel failed—intentionally, it seems—to give the defendants notice of its reinstatement. The defendants filed for removal eight days after first receiving service of any sort of notice of the reinstated lawsuit. This is well within the one-year bar, even assuming it has any relevance here.[6]

---

[6] Although not necessary to our decision here, we note that every circuit to have considered the question (albeit in very different procedural contexts) has held that the one-year bar is applicable

(continued...)

Before moving on, we pause to emphasize the absurdity of Price's arguments about the timeliness of the removal. Neither the language of nor the purposes behind the time limits contained in § 1446(b) could possibly support a reading that the limits run against defendants who are unaware of the pending claim. *See* 28 U.S.C. § 1446(b) (removal shall be sought within 30 days *of receipt* of the complaint or within 30 days *of receiving* the first removable pleading) (emphasis added); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 347 (1999) ("An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."); *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n,* 668 F.2d 962, 965 (7th Cir. 1982) ("The purpose of the 30-day limitation is twofold: to deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court.").

---

[6] (...continued)
to cases that are not initially removable. *See Brown v. Tokio Marine & Fire Ins. Co.*, 284 F.3d 871, 873 (8th Cir. 2002); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999), *cert. denied*, 528 U.S. 1076, (2000); *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 886 (5th Cir. 1998); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1316-17 (9th Cir.), *cert. denied*, 525 U.S. 963 (1998). The clause containing the one-year bar is part of the paragraph specifically addressing the time limits for cases that are not initially removable; its placement in this paragraph indicates that it modifies only the immediately preceding language in the same paragraph, not the more general time limitation contained in the preceding paragraph.

That an attorney could in good faith expect to prevail on such baseless arguments is difficult to fathom.

## B. Default Judgment

Price next challenges the district court's order granting the defendants' motion to vacate the default judgments pursuant to Rule 60(b) of the *Federal Rules of Civil Procedure*. Although relief under Rule 60(b) is subject to review for abuse of discretion, if a "judgment is void, it is a per se abuse of discretion for a district court to deny a movant's motion to vacate the judgment." *United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply*, 55 F.3d 1311, 1317 (7th Cir. 1995). A judgment is void and should be vacated pursuant to Rule 60(b)(4) if "the court that rendered the judgment acted in a manner inconsistent with due process of law." *Id.* at 1316 (citations omitted); *see also Ervin v. Wilkinson*, 701 F.2d 59, 61 (7th Cir. 1983) ("Where the moving party has been prevented from presenting the merits of his case by the conduct of which he complains, Rule 60(b) relief is most appropriate."). In determining whether relief under Rule 60(b) is appropriate, "federal courts may apply state procedural rules to pre-removal conduct." *Romo*, 250 F.3d at 1122.

As we have noted, Rule 5(A) of the *Indiana Rules of Trial Procedure* requires that all parties not in default be served with any motions or pleadings filed with the court. The defendants were not in default, yet Price's attorney did not provide them with notice of the motion to reinstate the lawsuit, the motions for default judgment, or any other proceedings that occurred subsequent to reinstatement—that is, until collection was attempted with the commencement of garnishment. Moreover, the Supreme Court of Indiana has held that an attorney has a duty under the *Indiana Rules of Professional Conduct*

to provide any known counsel with a motion for default before allowing entry of a default judgment; failure to comply with that duty requires relief from the judgment. *Smith v. Johnston*, 711 N.E.2d 1259, 1264 (Ind. 1999) ("A default judgment is appropriate only where a party has not appeared in person or by counsel and, if there is a lawyer known to represent the opposing party in the matter, counsel had made reasonable effort to contact that lawyer."); *see also* IND. R. PROF. COND. 3.3(d), 3.5(b), 8.4(d). As is clear from the 1993 correspondence in the record, Price's attorney knew the defendants had legal representation, yet he made no effort to inform either the defendants or known counsel that the default proceedings were occurring. Because the default judgments failed to comply with these requirements of Indiana law, they were void; the district court was therefore *required* to vacate the judgments, making this appeal of its order doing so frivolous.[7]

**C. Summary Judgment**

We review the district court's entry of summary judgment de novo, viewing the facts in the light most favorable to Price. *See Healy v. City of Chicago*, 450 F.3d 732, 738 (7th Cir. 2006). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

---

[7] Price also contends that the district court was barred from vacating the judgment by a one-year time limitation found in Rule 60(b), but this limit only applies to relief based upon 60(b)(1)-(3). Because this judgment was vacated under Rule 60(b)(4), the one-year limit is inapplicable.

The statute of limitations in Indiana for loss-of-consortium claims is two years. The district court concluded that the latest possible date on which Price's claim accrued is February 3, 1992, making his July 1998 attempted reinstatement of the claim more than four years too late. In hopes of circumventing this time bar, Price first maintains that the filing date for his reinstated claim relates back to the initial filing of his case in 1993. To the contrary, under Indiana law, "a voluntary dismissal does not warrant a statutory tolling of the ordinarily applicable limitations period." *Morris v. Jenkins*, 819 F.2d 678, 681 (7th Cir. 1987) (applying Indiana law); *see also Al-Challah v. Barger Packaging*, 820 N.E.2d 670, 675 (Ind. Ct. App. 2005) ("A complaint that is voluntarily dismissed is treated as if it never existed and, thus, cannot toll the statute of limitations." (citing *Kohlman v. Finkelstein*, 509 N.E.2d 228, 232 (Ind. Ct. App. 1987))).[8]

Price next contends that the statute of limitations was tolled when he filed with the Vaccine Court in July 1994. But this was five months after the two-year limitations period had expired (the claim accrued no later than February 3, 1992). Because no intervening occurrence tolled the two-year statute of limitations, the district court properly concluded that his claim was barred under Indiana law.

---

[8] Although Indiana law contains a provision that permits a plaintiff to refile a dismissed claim despite the expiration of the statute of limitations, that provision does not apply to voluntarily dismissed cases. *See Morris v. Jenkins*, 819 F.2d 678 (7th Cir. 1987) (applying Indiana law); *Al-Challah v. Barger Packaging*, 820 N.E.2d 670 (Ind. Ct. App. 2005); *Ferdinand Furniture Co., Inc. v. Anderson*, 399 N.E.2d 799 (Ind. Ct. App. 1980). Moreover, that provision requires that applicable cases be refiled within three years of dismissal, which Price's claim was not. *See* IND. CODE 34-11-8-1.

### III.  Conclusion

For the foregoing reasons, we affirm the district court's orders denying remand, vacating the default judgments, and dismissing Price's claim on statute of limitations grounds. Price's attorney, Delmar Kuchaes, is ordered to show cause why he should not be sanctioned for filing a frivolous appeal. *See* FED. R. APP. P. 38. He has 21 days to file a response. We also direct the clerk of this court to transmit a copy of this opinion to the Indiana Supreme Court Disciplinary Commission for any action it deems appropriate.

AFFIRMED, WITH ORDER TO SHOW CAUSE AND
DIRECTIONS TO CLERK.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*